UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | Case No. 3:73-cv-00127-MMD-WGC |
| Plaintiffs, | ORDER |
| v. | |
| WALKER RIVER IRRIGATION DISTRICT, *et al.*, | |
| Defendants. | |

**I.   SUMMARY**

This is an approximately 100-year-old case regarding apportionment of the water of the Walker River, which begins in the high eastern Sierra Nevada mountains of California, and ends in Walker Lake in Northern Nevada. *See U.S. v. Walker River Irrigation Dist.*, 890 F.3d 1161, 1165-69 (9th Cir. 2018) ("*Walker IV*") (reciting the history of this case); *see also* Google Maps, *Walker River*, https://goo.gl/maps/jJsuqbBJB7KbrBaW8 (last visited July 16, 2020) (showing the river). Before the Court is Plaintiff the United States of America's motion for judgment on the pleadings seeking judgment on five affirmative defenses in response to Plaintiff's counterclaims, which essentially seek to reopen a 1936 decree governing water rights in the Walker River to secure increased water rights for the Walker River Paiute Tribe ("Tribe").[1] (ECF No. 2606 ("Motion").) Because the Court finds Plaintiff is entitled to

---

[1] Defendants filed a consolidated response (ECF No. 2619), and Plaintiff filed a reply (ECF No. 2622). More specifically, the Defendants who filed the consolidated response are Walker River Irrigation District, Desert Pearl Farms, LLC, Peri Family Ranch, LLC, Peri & Peri, LLC, and Frade Ranches, Inc., Lyon County, Centennial Livestock, the California State Agencies (State Water Resources Control Board, Department of Fish and Wildlife, and Department of Parks and Recreation), the Nevada Department of Wildlife, the Schroeder Group, and Mono County. (ECF No. 2619 at 12 n.1.) The Court will refer to them collectively as "Defendants" in this order.

judgment as a matter of law on these particular affirmative defenses,[2]—and as further explained *infra*—the Court will grant the Motion.

## II.     BACKGROUND

The Court incorporates by reference the factual and procedural background of this long-running case provided in *Walker IV*. *See* 890 F.3d at 1165-69. (*See also* ECF No. 2606 at 3 n.2 (suggesting that reviewing the prior published decisions and opinions in this case is the best way to understand its history)).) Briefly, the parties' rights to use water from the Walker River are governed by a decree entered in 1936, as modified following a Ninth Circuit remand (the "1936 Decree"). *See Walker IV*, 890 F.3d at 1162, 1166-67. The dispute currently before the Court involves claims filed by Plaintiff as counterclaims in the 1990s to effectively reopen the 1936 Decree to secure additional water rights for the Tribe. *See id.* at 1167-68. Defendants have filed answers to those counterclaims, in which they assert certain affirmative defenses to Plaintiff's counterclaims. (ECF No. 2619 at 12 n.2 (proffering ECF No. 2544 as a representative answer containing affirmative defenses common to most answers filed in this case).) Plaintiff's Motion seeks dismissal of five particular affirmative defenses asserted by most Defendants; (1) laches; (2) estoppel and waiver; (3) no reserved rights to groundwater; (4) the United States lacks the power to reserve water rights after Nevada's statehood; and (5) claim and issue preclusion. (ECF No. 2606 at 3.)

While the Court will discuss *Walker IV* throughout this order, by way of background, the *Walker IV* court reversed and remanded a decision of the district judge previously assigned to this case where he dismissed Plaintiff's counterclaims under the doctrine of *res judicata*. *See* 890 F.3d at 1168-69, 1172-73. However, the *Walker IV* court also affirmed the prior district judge's decision that the Court has jurisdiction to adjudicate Plaintiff's counterclaims. *See id.* at 1169-72. Plaintiff's Motion can be conceptualized as

---

[2]This finding does not preclude Defendants from continuing to argue on the merits that the "general principles of finality and repose[,]" *Walker IV*, 890 F.3d at 1173, should bar Plaintiff from reopening the 1936 Decree, as discussed herein.

an opening skirmish that will not fully resolve the larger battle on the merits of Plaintiff's counterclaims, which, with its jurisdiction confirmed by *Walker IV*, the Court will preside over in subsequent proceedings. *See id.*

## III.  LEGAL STANDARD

"Because a Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion, the same standard of review applies to motions brought under either rule." *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (citation and internal quotation marks omitted). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Id.* (citation and internal quotation marks omitted).

## IV.  DISCUSSION

Defendants spend most of their response to the Motion arguing about general principles of finality and repose. (ECF No. 2619.) But as Plaintiff points out in reply, Defendants largely concede Plaintiffs have the correct understanding of the law when it comes to the specific affirmative defenses targeted by the Motion. (ECF No. 2622.) Thus, much of Defendants' response is beside the point as to the narrow issues presented in Plaintiff's Motion. Defendants' response instead signals to the Court that Plaintiff's counterclaims may present complex issues on the merits—but those issues are not yet squarely before the Court.

Indeed, Defendants' primary arguments in their response highlight—and fall within—the tension created by the Ninth Circuit's *Walker IV* opinion that will likely have a significant impact on the merits of this case. On the one hand, the *Walker IV* court clearly stated that "traditional claim preclusion and issue preclusion do not apply" to Plaintiff's counterclaims. 890 F.3d at 1172. On the other hand, citing *Arizona v. California*, 460 U.S. 605, 619 (1983) ("*Arizona II*"), the *Walker IV* court stated Plaintiff's "counterclaims are 'subject to the general principles of finality and repose, absent changed circumstances or unforeseen issues not previously litigated.'" 890 F.3d at 1173. When it comes to resolving the merits of Plaintiff's counterclaims, the legal tension between these two statements may

3

be difficult to resolve. Moreover, because of the latter statement, nothing in this order should be interpreted to foreclose Defendants from arguing that general principles of finality and repose preclude the Court from reopening the 1936 Decree in subsequent proceedings in this case. And, of course, the principles of finality and repose are similar in some senses to res judicata, estoppel, waiver, and laches. However, the caselaw is overwhelmingly on Plaintiff's side as pertinent to its Motion, leading the Court to find that Defendants may not explicitly assert the affirmative defenses challenged in the Motion.

The Court will address each of the challenged affirmative defenses in turn, *infra*—after first addressing the preliminary matter of whether to consider Defendants' exhibits attached to their response. But this order obviously does not resolve Plaintiff's counterclaims.

### A.  Considering Exhibits

Defendants attached several exhibits to their response. (ECF Nos. 2619-1 through 2619-14.) Plaintiff replies that the Court should not consider these exhibits, and requests the Court set a supplemental briefing schedule if it decides to consider the exhibits and thus treats Plaintiff's Motion as one for summary judgment. (ECF No. 2622 at 7-8; *see also id.* at 8 n.24.) The Court agrees with Plaintiff it is more appropriate to resolve the Motion based solely on the pleadings (*id.* at 7-8), and therefore declines to consider the exhibits.

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment." *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (citations omitted). Thus, the Court starts from the presumption it should not consider the exhibits, and recognizes it can only consider them if it converts Plaintiff's Motion into one for summary judgment.

The Court declines to convert Plaintiff's Motion into one for summary judgment, and therefore declines to consider the exhibits Defendants attached to their response. "[T]he central question [in determining whether to convert a Rule 12 motion into one for summary judgment] is whether the proffered materials and additional procedures required by Rule 56 will facilitate disposition of the action or whether the court can base its decision upon the face of the pleadings." *Dreamdealers USA, LLC v. Lee Poh Sun*, Case No. 2:13-cv-1605-JCM-VCF, 2014 WL 3919856, at *3 (D. Nev. Aug. 12, 2014) (citations omitted). As further explained *infra*, the Court can base its decision on the face of the pleadings. Thus, there is no need to convert Plaintiff's Motion into one for summary judgment. Moreover, declining to consider Defendants' exhibits better aligns with the judgment on the pleadings analysis the Court must conduct. *See Hal Roach*, 869 F.2d at 1150; *see also Ricketts v. CBS Corps.*, 439 F. Supp. 3d 1199, 1199 n.2 (C.D. Cal. 2020), *reconsideration denied*, Case No. CV1903895DSFMRWX, 2020 WL 3124218 (C.D. Cal. Mar. 19, 2020) ("a motion for judgment on the pleadings is based on the factual allegations contained in the challenged pleading[,] and evidentiary matters outside the pleadings are not relevant to that determination.") (internal quotation marks, punctuation, and citations omitted). The Court therefore excludes Defendants' exhibits from consideration in ruling on Plaintiff's Motion.

**B.     Laches**

Plaintiff first argues the equitable defense of laches does not apply when, as here, Plaintiff is acting in its sovereign capacity to protect a property right held in trust by the United States for the benefit of an Indian tribe. (ECF No. 2606 at 7-22; *see also id.* at 9-10.) Defendants respond that "even if laches, waiver, and estoppel do not apply in the most technical sense to the [Plaintiff's] claims, they, like res judicata, at a minimum inform the principles of finality and repose that do limit and preclude the [Plaintiff's] claims." (ECF No. 2619 at 49.) That may be true, but it also does not make Plaintiff's assertion any less true. The Court thus agrees with Plaintiff.

///

Plaintiff asserts *Winters*[3] rights in its counterclaims. (ECF No. 2606 at 9-11; *see also* ECF Nos. 58, 59 (counterclaims).) *Winters* rights are "federal reserved water rights" that apply to Indian reservations, based on the implication that the federal government "reserves appurtenant water then unappropriated to the extent needed to accomplish the purpose of the reservation" when the government creates an Indian reservation. *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, 849 F.3d 1262, 1268 (9th Cir. 2017) ("*Agua Caliente*") (citations omitted). The Supreme Court's recognition of *Winters* rights "stems from the belief that the United States, when establishing reservations, intended to deal fairly with the Indians by reserving for them the waters without which their lands would have been useless." *Id.* (citations and internal punctuation omitted). But "the *Winters* doctrine only applies in certain situations: it only reserves water to the extent it is necessary to accomplish the purpose of the reservation, and it only reserves water if it is appurtenant to the withdrawn land." *Id.* (citations omitted). "Once established, however, *Winters* rights vest on the date of the reservation and are superior to the rights of future appropriators." *Id.* (citations, internal quotation marks, and punctuation omitted).

Laches is not available as a defense to Plaintiff's assertion of *Winters* rights in its counterclaims. *See Walker IV*, 890 F.3d at 1168-69, 1174 (reversing and remanding district court order in this case that dismissed the same counterclaims at issue here, with laches as one alternative basis for the ruling, though not analyzing the district court's latches finding in detail); *see also U.S. v. Ahtanum Irr. Dist.*, 236 F.2d 321, 334 (9th Cir. 1956) ("No defense of laches or estoppel is available to the defendants here for the Government as trustee for the Indian Tribe, is not subject to those defenses."); *U.S. v. Washington*, 853 F.3d 946, 967 (9th Cir. 2017) ("The United States cannot, based on laches or estoppel, diminish or render unenforceable otherwise valid Indian treaty rights."); *Swim v. Bergland,* 696 F.2d 712, 718 (9th Cir. 1983) ("Laches or estoppel is not available

---

[3]*Winters v. United States*, 207 U.S. 564 (1908).

to defeat Indian treaty rights."); *U.S. v. State of Cal.*, 332 U.S. 19, 40, *supplemented sub nom. U.S. v. California*, 332 U.S. 804 (1947), *recognized as superseded by statute on other grounds in Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1887 (2019) ("The Government, which holds its interests here as elsewhere in trust for all the people, is not to be deprived of those interests by the ordinary court rules designed particularly for private disputes over individually owned pieces of property; and officers who have no authority at all to dispose of Government property cannot by their conduct cause the Government to lose its valuable rights by their acquiescence, laches, or failure to act.") (footnote omitted). Defendants' laches argument in its response (ECF No. 2619 at 49-65) buckles under the substantial weight of this caselaw.

It is true, as Defendants argue (ECF No. 2619 at 64), that the Walker River Indian Reservation was not created by a treaty. *See U.S. v. Walker River Irr. Dist.*, 104 F.2d 334, 335 (9th Cir. 1939) ("*Walker III*") ("The Walker River Indian Reservation was set aside by departmental action on November 29, 1859 for the use of the Pahute tribe."). Defendants attempt to distinguish *Washington* (and implicitly *Swim*) on this basis. (ECF No. 2619 at 63-65.) However, the Ninth Circuit found in *Walker III* that the lack of a treaty did not preclude its recognition of the Walker River Tribe's *Winters* rights. *See id.* at 336 ("We see no reason to believe that the intention to reserve need be evidenced by treaty or agreement."), 339-40 ("We hold that there was an implied reservation of water to the extent reasonably necessary to supply the needs of the Indians."). Indeed, *Walker III* emphasized that the federal government's intent in creating the reservation, and obligations to the Tribe because of its relationship to the Tribe as a trustee, are more important in determining whether *Winters* rights exist than which type of document establishes the reservation. *See id.* at 336. Thus, the Court does not find that the lack of a treaty creating the reservation at issue here a meaningful distinction between this case and the cases referenced in the preceding paragraph. To the contrary, the Court finds that laches is unavailable as an affirmative defense because Plaintiff is acting in its sovereign capacity to protect a property right held in trust by the United States for the benefit of the Tribe.

In sum, the Court will grant Plaintiff's Motion as to Defendants' affirmative defense of laches.

### C. Waiver and estoppel

For similar reasons, the Court will also grant Plaintiff's Motion as to Defendants' asserted affirmative defenses of waiver and estoppel. The parties' arguments are basically the same as they are for laches (ECF Nos. 2606 at 7-22, 2619 at 45-65, 2622 at 17-21), and the Court again agrees with Plaintiff these defenses are not strictly available to Defendants in this case. *See supra* Section IV.B.; *see also United States v. City of Tacoma, Wash.*, 332 F.3d 574, 581 (9th Cir. 2003) ("there can be no argument that equitable estoppel bars the United States' action because, when the government acts as trustee for an Indian tribe, it is not at all subject to that defense."). Moreover, the Ninth Circuit rejected an estoppel argument in *Walker III*. *See* 104 F.2d at 339-40. Thus, Defendants cannot assert equitable estoppel or waiver in this case.

### D. No reserved rights for groundwater

Plaintiff also argues Defendants' asserted affirmative defense that the *Winters* doctrine does not apply to groundwater is foreclosed by the Ninth Circuit's decision in *Agua Caliente*. (ECF No. 2606 at 22; *see also, e.g.*, ECF No. 2544 at 5 (including as the eleventh affirmative defense, "[t]he implied reservation of water rights doctrine does not apply to groundwater.").) And as Plaintiff points out in reply (ECF No. 2622 at 10-11), Defendants do not really respond to this argument, but instead pivot to what Defendants themselves included as a separate affirmative defense (ECF No. 2544 at 5 (*compare* Eleventh Affirmative Defense *with* Twelfth Affirmative Defense)) to argue that *Agua Caliente* favors another one of Defendants' merits positions (ECF No. 2619 at 65-67).

The Court agrees with Plaintiff. *Agua Caliente* establishes that the *Winters* doctrine applies to groundwater. *See* 849 F.3d at 1270 ("And while we are unable to find controlling federal appellate authority explicitly holding that the *Winters* doctrine applies to groundwater, we now expressly hold that it does.") (footnote omitted). The Court will

8

therefore grant Plaintiff's Motion as to Defendants' asserted defense that the *Winters* doctrine does not apply to groundwater.

### E. U.S.'s power to reserve water rights after Nevada's statehood

Plaintiff next argues Defendants' asserted affirmative defense that Nevada becoming a state deprived the United States of the power to reserve water for the benefit and use of federal land is also contrary to governing law. (ECF No. 2606 at 24-28; *see also, e.g.*, ECF No. 2544 at 5 (asserting as the thirteenth affirmative defense that "[t]he United States had no power, after Nevada became a State on October 31, 1864, to reserve water for the benefit and use of federal land.").) Defendants concede Plaintiff is correct. (ECF No. 2619 at 67 ("[Plaintiff is] correct that, even after Nevada became a state, the United States continued to have the power to reserve water for its property under the Property Clause.").) Thus, while there is no real dispute to resolve here, the Court will also grant Plaintiff's Motion as to this affirmative defense. *See also U.S. v. Dist. Court In & For Eagle Cty., Colo.*, 401 U.S. 520, 522-23 (1971) ("[T]he Federal Government had the authority both before and after a State is admitted into the Union 'to reserve waters for the use and benefit of federally reserved lands.'") (citations omitted); *Walker III*, 104 F.2d at 339-40 (finding the *Winters* doctrine applied to this case, and created rights dating to the creation of the reservation in 1859, even though Nevada subsequently became a state).

### F. Claim and issue preclusion

Plaintiff finally argues that Defendants' asserted defenses of claim and issue preclusion are barred by the Ninth Circuit's decision in *Walker IV*. (ECF No. 2606 at 28-29.) Defendants generally respond with their arguments about finality and repose addressed *supra* at the beginning of Section IV. (ECF No. 2619 at 25-45.) But the Ninth Circuit was quite clear in *Walker IV*: "traditional claim preclusion and issue preclusion do not apply." 890 F.3d at 1172 (citation omitted). The Court will therefore also grant Plaintiff's Motion as to Defendants' asserted affirmative defenses of claim and issue preclusion.

///

///

In addition, and separately, Plaintiff attacks some affirmative defenses and arguments not raised in its Motion throughout its reply because Defendants raised them in their response, and basically asks the Court to enter judgment as a matter of law on those defenses and arguments at this time if the Court is so inclined. (ECF No. 2622; *see also e.g.*, *id.* at 12-13 (attacking Defendants' Twelfth Affirmative Defense because Defendants raised it in their response even though the Motion only targeted their Eleventh Affirmative Defense).) The Court is not so inclined. It would be inappropriate to grant judgment to Plaintiff on something Plaintiff did not raise in its Motion. No doubt, many issues and arguments remain for the Court to resolve in this case before it can conclusively resolve Plaintiff's counterclaims. But this order only addresses the affirmative defenses explicitly challenged in Plaintiff's Motion.

### G.  Leave to amend

Defendants request leave to amend their answers if the Court grants Plaintiff's Motion. (ECF No. 2619 at 70.) Leave will not be granted because amendment would be futile. *See* Fed. R. Civ. P. 15(a) (providing that leave to amend should generally be granted unless, among other reasons, amendment would be futile); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). As explained *supra*, Defendants' asserted affirmative defenses challenged in Plaintiff's Motion fail as a matter of law. Defendants could not amend their answers to make these affirmative defenses legally viable. The Court therefore declines to grant Defendants leave to amend.

### V.  CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Plaintiff's motion for judgment on the pleadings (ECF No. 2606) is granted.

///

///

It is further ordered Plaintiff is entitled to judgment as a matter of law in its favor on the following affirmative defenses: (1) laches; (2) estoppel/waiver; (3) no reserved rights to groundwater; (4) the United States is without the power to reserve water rights after Nevada's statehood; and (5) claim and issue preclusion.

DATED THIS 20th day of July 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE