UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | Case No. 3:73-cv-00127-MMD-WGC |
| Plaintiffs, | ORDER |
| v. | |
| WALKER RIVER IRRIGATION DISTRICT, *et al.*, | |
| Defendants. | |

I.    **SUMMARY**

This is an approximately 100-year-old case regarding apportionment of the water of the Walker River, which begins in the high eastern Sierra Nevada mountains of California, and ends in Walker Lake in Northern Nevada. *See U.S. v. Walker River Irrigation Dist.*, 890 F.3d 1161, 1165-69 (9th Cir. 2018) ("*Walker IV*") (reciting the history of this case); *see also* Google Maps, *Walker River*, https://goo.gl/maps/jJsuqbBJB7KbrBaW8 (last visited Sept. 20, 2021) (showing the river). Before the Court is Plaintiffs the United States of America ("United States") and the Walker River Paiute Tribe ("Tribe")'s motion for summary judgment on four affirmative defenses asserted in response to Plaintiffs' counterclaims, which essentially seek to reopen a 1936 decree governing water rights in the Walker River to secure increased water rights for the Tribe.[1] (ECF No. 2638 ("Motion").) Because the Court finds Plaintiffs are entitled to

---

[1]Principal Defendants filed a consolidated response (ECF No. 2649), and Plaintiffs filed a reply (ECF No. 2659). Principal Defendants are "the Walker River Irrigation District, Desert Pearl Farms, LLC, Peri Family Ranch, LLC, Peri & Peri, LLC, and Frade Ranches, Inc., Lyon County and Centennial Livestock, the Nevada Department of Wildlife, the Schroeder Group, and Mono County." (ECF No. 2649 at 16 n.1.) The Court will refer to them collectively as "Defendants" in this order.

1  judgment as a matter of law on these particular affirmative defenses—and as further

2  explained *infra*—the Court will grant the Motion.[2]

3  **II.     RELEVANT BACKGROUND**

4        The Court again incorporates by reference the factual and procedural background

5  of this long-running case provided in *Walker IV*. *See* 890 F.3d at 1165-69. Briefly, the

6  parties' rights to use water from the Walker River are governed by a decree entered in

7  1936, as modified following a Ninth Circuit Court of Appeals remand (the "1936 Decree").

8  *See id.* at 1162, 1166-67. The dispute currently before the Court involves claims filed by

9  the United States as counterclaims in the 1990s to effectively reopen the 1936 Decree to

10 secure additional water rights for the Tribe. *See id.* at 1167-68. Defendants have filed

11 answers to those counterclaims, in which they assert certain affirmative defenses. (ECF

12 No. 2659 at 5 (proffering ECF No. 2523 as a representative answer containing affirmative

13 defenses common to most answers filed in this case).) Plaintiffs' Motion seeks summary

14 judgment on Defendants' Third, Seventh, Twelfth, and Fourteenth Affirmative Defenses.

15 (ECF No. 2638 at 49.) Slightly over a year ago, on the United States' motion, the Court

16 granted judgment on the pleadings to Plaintiffs on five other asserted affirmative defenses.

17 (ECF No. 2626.) In that order, the Court declined to rule on certain affirmative defenses

18 raised by Defendants, but not in the United States' motion. (*Id.* at 10.) Plaintiffs

19 characterize their Motion as primarily seeking summary judgment on the affirmative

20 defenses the Court declined to rule on last year. (ECF No. 2659 at 6.)

21 ///

22 ///

23 ///

24

25

26

27      [2]Defendants requested oral argument on this Motion, and Plaintiffs opposed. (ECF
Nos. 2660, 2661, 2662.) The Court declines to hold oral argument on the Motion because
28 it finds it unnecessary. *See* LR 78-1 ("All motions may be considered and decided with or
without a hearing. . . Parties must not file separate motions requesting a hearing.").

As the Court explained in its prior order issued last year, the United States asserts *Winters*[3] rights on behalf of the Tribe in its counterclaims. (ECF No. 2626 at 6.) *Winters* rights are "federal reserved water rights" that apply to Indian reservations, based on the implication that the federal government "reserves appurtenant water then unappropriated to the extent needed to accomplish the purpose of the reservation" when the government creates an Indian reservation. *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, 849 F.3d 1262, 1268 (9th Cir. 2017) ("*Agua Caliente*") (citations omitted). As Plaintiffs characterize their counterclaims in their Motion, they seek: "(1) a storage water right associated with Weber Reservoir; (2) a groundwater right associated with lands added to the Reservation by executive and congressional action in 1918, 1928, 1936, and 1972; and (3) a groundwater right underlying all lands within the exterior boundaries of the Reservation, some of which have been held in trust by the United States for the Tribe since 1859." (ECF No. 2638 at 7.) Plaintiffs proffered an illustrative map with their Motion showing the lands added to the Walker River Reservation to which Defendants did not object. (ECF No. 2638-3.) The Court includes a copy of the map here for reference.

///

///

///

///

///

///

///

///

///

///

---

[3] *Winters v. United States*, 207 U.S. 564 (1908).





Figure 8
Current Walker River Indian Reservation
Land Status Map - 6/18/2020

(*Id.* at 2.)

The parties provided statements of fact in their briefing on the Motion supported by various exhibits. (ECF No. 2638 at 25-26, 2638-2,[4] 2649 at 17-50.) The Court incorporates by reference both parties' statements of fact for context but does not fully adopt either side's recitation of the facts.

The following facts—the only material facts for resolving the Motion—are undisputed unless otherwise noted. The initial complaint in the proceedings culminating with the 1936 Decree only discussed surface water and explained that the purpose of that litigation was to prevent upstream water users from diverting water from the Walker River before it reached the Walker River Reservation—the river was running dry before it hit the

---

[4]Plaintiffs provided their statement of undisputed material facts as a separate document.

4

reservation. (ECF No. 2638-5 at 30-33, 36-37.) The United States did not seek any adjudication of groundwater rights, or a storage water right regarding water in a reservoir. (*See id.*) This understanding persisted through the initial litigation. For example, when a potential reservoir came up during cross examination in the initial litigation before the special master, the government objected to the relevance of those questions and the special master tentatively agreed that the reservoir was immaterial to the issues in the case. (ECF No. 2652-8 at 7-9.) The Court's initial decision confirmed as much, noting that a report prepared by the Department of the Interior recommended the creation of a reservoir, and opining that the United States should build one, but simultaneously indicating that reservoir was outside the scope of the initial phase of this case. *See United States v. Walker River Irr. Dist.*, 11 F. Supp. 158, 165-66 (D. Nev. 1935) ("*Walker I*"), *decree rev'd*, 104 F.2d 334 (9th Cir. 1939). In addition, after the initial litigation concluded, the parties appeared to retain the same view—that the litigation had not addressed the question of water storage in Webber Reservoir. (ECF No. 2638-18 at 4-5.) This history is important to the Court's discussion *infra* of the parties' arguments regarding the Third Affirmative Defense.

III.    **LEGAL STANDARD**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence

5

1   necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to

2   resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718

3   F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253,

4   288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and

5   draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement*

6   *Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

7       The moving party bears the burden of showing that there are no genuine issues of

8   material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once

9   the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting

10  the motion to "set forth specific facts showing that there is a genuine issue for trial."

11  *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings

12  but must produce specific evidence, through affidavits or admissible discovery material, to

13  show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir.

14  1991), and "must do more than simply show that there is some metaphysical doubt as to

15  the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting

16  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere

17  existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]"

18  *Anderson*, 477 U.S. at 252.

19  **IV.   DISCUSSION**

20      The Court first addresses the threshold issues of Defendants' concessions in

21  response to the Motion, followed by the parties' arguments on the Third Affirmative

22  Defense, and then addresses the Seventh and Twelfth Affirmative Defenses together.

23      **A.   Threshold Issues**

24      Defendants conceded the applicability of the Fourteenth Affirmative Defense, and

25  noted they are not asserting the Third Affirmative Defense, finality and repose, as it

26  "applies to the claims for the 1936 and 1972 lands." (ECF No. 2649 at 89.) There is

27  accordingly no dispute as to these issues, and the Court will grant Plaintiffs summary

28

1  judgment as to the Fourteenth Affirmative Defense, along with the Third Affirmative

2  Defense as to the 1936 and 1972 lands.

3          **B.      Third Affirmative Defense**

4          Defendants' Third Affirmative Defense is that the principles of finality and repose

5  articulated in *Arizona v. California*, 460 U.S. 605, 619 (1983) ("*Arizona II*") prelude the

6  Court from reopening the 1936 Decree to recognize the water rights Plaintiffs seek in their

7  counterclaims.[5] (ECF No. 2649 at 20.) Plaintiffs argue they are entitled to summary

8  judgment on this affirmative defense because *Arizona II*'s principles of finality and repose

9  only preclude claims that were actually litigated—and their counterclaims were not actually

10  litigated in the initial phase of this case litigated in the 1920s and 30s. (ECF No. 2638 at

11  26-39.) Plaintiffs further argue that finality and repose can be overridden by changed,

12  unexpected circumstances. (*Id.* at 26.) Defendants counter that *Arizona II*'s principles of

13  finality and repose bar not only claims that were actually litigated, but those that could

14  have been litigated. (ECF No. 2649 at 50-53; *see also id.* at 54-72.) Defendants

15  alternatively argue that the water rights claims Plaintiffs seek in their counterclaims were

16  actually litigated. (ECF No. 2649 at 52, 72-76.) The Court agrees with Plaintiffs.

17          To start, the Court finds that the best reading of *Arizona II* is that the principles of

18  finality and repose described therein only bar claims that were actually litigated. And as

19  explained further below, Plaintiffs' counterclaims were not actually litigated in the first

20  phase of this case.

21          *Arizona II* is the second in a trilogy of cases adjudicating water rights to the

22  Colorado River under the Supreme Court's original jurisdiction. *See Arizona v. California*,

23  530 U.S. 392, 397-401, *supplemented*, 531 U.S. 1 (2000) ("*Arizona III*"). *Arizona II*

24  specifically focused on the claims of Native American tribes with reservation lands along

25  the Colorado River that they were entitled to water rights for certain lands omitted from the

26  initial adjudication of rights in *State of Ariz. v. State of Cal.*, 373 U.S. 546 (1963) ("*Arizona*

27

28  _____

          [5]Though as noted *supra*, with the exception of the 1936 and 1972 lands.

1  *I*'). *See Arizona II*, 460 U.S. 605. In *Arizona I*, the Supreme Court had determined that the
2  relevant tribes' water rights would be measured by 'practicably irrigable acreage,' instead
3  of some other measure such as the tribes' population or their 'reasonably foreseeable
4  needs,' and determined how much water each tribe was entitled to based on the
5  determination of their reservations' 'practicably irrigable acreage.' *See Arizona II*, 460 U.S.
6  at 617. In *Arizona II*, the tribes sought additional water rights based on additional
7  practicably irrigable acreage that was purportedly inadvertently omitted from *Arizona I*.
8  *See id.* The Supreme Court held that general principles of finality and repose prevented it
9  from reopening the existing decree resulting from *Arizona I* such that it could not
10 recalculate the practicably irrigable acreage it calculated for each tribe's reservation in
11 *Arizona I. See id.* at 615-628.

12      But contrary to Defendants' argument—which takes a single instance of the phrase
13 'could have' out of context—the Supreme Court's holding in *Arizona II* is that principles of
14 finality and repose preclude relitigating issues that were actually litigated, not those that
15 could have been. This is primarily because the tribes who intervened in *Arizona II* were
16 seeking recalculation of fixed amounts that had already been determined in *Arizona I. See*
17 *id.* at 626. So, while the lands at issue were characterized as 'omitted lands,' that was
18 because they had previously been deemed not practicably irrigable, not because they
19 were added to reservations or otherwise not at issue in *Arizona I. See id.* at 617. Therefore,
20 *Arizona II* focused on an attempt to relitigate an issue that was actually litigated—the
21 amount of practicably irrigable acreage in each applicable reservation. *See id.* at 615-628.

22      The language the Supreme Court used in the finality and repose section of *Arizona*
23 *II* supports this conclusion. For example, the Supreme Court discussed relitigation, not
24 issues that could have been litigated. *See id.* at 625-27 (discussing relitigation and
25 reopening). The Supreme Court also described as a fundamental precept of common law
26 adjudication the principle that, "an issue once determined by a competent court is
27 conclusive[.]" *Id.* at 619. The Supreme Court further described what the tribes were asking
28 it to do as "recalculating," and noted that the paragraph of the applicable decree giving the

1   Supreme Court ongoing jurisdiction did not "contemplate a departure from these

2   fundamental principles so as to permit retrial of factual or legal issues that were fully and

3   fairly litigated 20 years ago." *Id.* at 620-21. And the Supreme Court concluded by stating

4   its belief that "the issue of practicably irrigable acreage was fully and fairly litigated in

5   1963." *Id.* at 628. In sum, "the general principles of finality and repose" preclude only

6   issues that were actually litigated, not those that could have been—and are subject to the

7   additional caveat for changed circumstances or unforeseen issues not previously litigated

8   not directly at issue as to the Motion. *Id.* at 619.

9          The Court also agrees with Plaintiffs that dicta in *Arizona III* further supports the

10  view that *Arizona II*'s general principles of finality and repose only preclude issues that

11  were actually litigated. (ECF No. 2638 at 36-39.) The pertinent discussion in *Arizona III* is

12  dicta because it was unnecessary to the Supreme Court's decision; the Supreme Court

13  rejected the state parties' preclusion arguments because they raised them too late. *See*

14  530 U.S. at 408-09. However, the Supreme Court declined the state parties' invitation to

15  raise the preclusion issue *sua sponte*, explaining that it plainly had not previously decided

16  the issue, stated that it did "not face the prospect of redoing a matter once decided[,]" and

17  stated that no judicial resources had previously been expended on the question. *See id.*

18  at 412-13. In other words, the Supreme Court stated that only an issue that had been

19  previously, actually litigated, would be precluded. *See id.*

20         *Walker IV* also supports this view. There, the Ninth Circuit wrote:

21         The better reading of Paragraphs XI and XII is that, together, they reiterate
           standard preclusion principles, i.e., that no party may relitigate a claim to
22         water rights in the Walker River Basin, in the Nevada District Court or any
           other court, that was litigated in the original case as of April 14, 1936.
23

24  890 F.3d at 1171-72. The Ninth Circuit refers to relitigation, and a claim that was litigated

25  in the original case—not a claim that could have been litigated. Overall, the Court finds

26  that Plaintiffs have the correct view of the principles of finality and repose described in

27  *Arizona II*—they preclude only issues actually litigated.

28  ///

                                                    9

1   Defendants' arguments to the contrary are unavailing. In addition to the single
2   instance of "could have" in *Arizona II*, Defendants also focus on the "full and fair
3   opportunity to litigate" language. (ECF No. 2649 at 54-58.) However, this argument ignores
4   that the Supreme Court was discussing an issue that was actually litigated in *Arizona I*—
5   the amount of practicably irrigable acreage in the respective reservations. *See Arizona II*,
6   460 U.S. at 615-628. Thus, this language tends to support Plaintiffs' argument more than
7   Defendants. Moreover, Defendants' suggestion that Plaintiffs had a full and fair
8   opportunity to litigate the water rights claims they now bring as counterclaims is
9   unpersuasive because Defendants concede this affirmative defense does not apply to
10  lands added to the Walker River Reservation later on. (ECF No. 2649 at 89.) Thus, even
11  Defendants concede that Plaintiffs did not have a full and fair opportunity to litigate at least
12  some of the water rights claims they are now attempting to assert. In addition, while
13  Defendants extensively rely on *Nevada v. United States*, 463 U.S. 110, 129-130 (1983)
14  (ECF No. 2649 at 58-61), the Ninth Circuit specifically distinguished *Nevada* from this case
15  in *Walker IV*. *See* 890 F.3d at 1172 n.13. Thus, Defendants' reliance on *Nevada* is
16  unpersuasive.

17  So too is Defendants' argument that adopting their view—principles of finality and
18  repose under *Arizona II* bar litigation of issues that could have been litigated—is sound
19  public policy. (ECF No. 2649 at 60-62.) Finality and repose as described in *Arizona II*
20  already accounts for the public policy concerns Defendants raised, but that does not mean
21  they apply to claims that could have been litigated. Indeed, the Supreme Court noted in
22  *Arizona II* that "[c]ertainty of rights is particularly important with respect to water rights in
23  the Western United States." 460 U.S. at 620. And that policy concern may well have
24  motivated the Supreme Court to hold that principles of finality and repose precluded the
25  tribes involved in that litigation from relitigating an issue the United States had already
26  litigated on their behalf. *See id.* at 620-636. However, as described above, the Court is
27  unpersuaded that the Supreme Court sought to preclude all water rights claims that could
28  have been litigated in the pertinent portion of *Arizona II*.

10

1    Moreover, the Court agrees with Plaintiffs that the two or three[6] types of water rights

2    asserted in Plaintiffs' counterclaims were not litigated during the original phase of this

3    case. Thus, principles of finality and repose do not preclude Plaintiffs from pursuing them

4    here.[7]

5    To start, Defendants arguably concede their argument that the types of water rights

6    asserted in Plaintiffs' counterclaims were actually litigated. Defendants themselves stated

7    that the United States did not pursue a storage right in the Webber Reservoir during the

8    original litigation, albeit characterizing that decision as a strategic one on the United

9    States' part. (ECF No. 2649 at 51-52.) And this concession fits with a broader

10   characterization of Defendants' argument in their response—Defendants' argument that

11   Plaintiffs' counterclaims were actually litigated is really an argument that they could have

12   been litigated. For example, consider this argument:

13   > [T]he "claim" that was actually litigated from 1924 through 1939 was the
     > United States' entire water right under the implied reservation of water
14   > doctrine for the Walker River Indian Reservation to meet the then and future
     > needs of the Tribe quantified by 10,000 acres of irrigable land and with an
15   > 1859 priority date. For practical reasons, the United States sought to satisfy
     > that right from the surface water of the Walker River, which was its choice.
16   > However, having made that choice, it is not entitled, decades later, to enlarge
     > its right by asserting the same claim against a groundwater source.

17

18   (*Id.* at 52.) Though Defendants characterize their contention as arguing that the United

19   States litigated a claim for their entire water right implied by the Walker River Reservation,

20   Defendants emphasize that the United States chose to pursue only a surface water right,

21   and then argue Plaintiffs should be held to that choice instead of being able to 'enlarge'

22   their rights. (*Id.*) Defendants are accordingly dressing their 'could have been' litigated

23   argument up as a 'was actually litigated' argument. And this example is consistent with

24

25

26   [6]Depending on whether the Court uses the three-part characterization that Plaintiffs
27   offer of their counterclaims, or views Plaintiffs as seeking groundwater and a storage water
     right.

28   [7]The Court agrees with Defendants both that the Ninth Circuit left this issue for this
     Court to decide and that the Court has not previously decided it. (ECF No. 2649 at 53-54.)

11

1    much of the rest of Defendants' 'was actually litigated' argument. It therefore seems to the

2    Court that Defendants have conceded their 'was actually litigated' argument.

3         However, to the extent Defendants have not conceded this issue, the Court agrees

4    with Plaintiffs that the record supports their view that the water rights Plaintiffs seek in their

5    counterclaims were not actually litigated in the original proceedings leading to the 1936

6    Decree. The initial complaint in those proceedings only discussed surface water and

7    explained that the purpose of that litigation was to prevent upstream water users from

8    diverting water from the Walker River before it reached the Walker River Reservation.

9    (ECF No. 2638-5 at 30-33, 36-37.) The United States did not seek any adjudication of

10   groundwater or a storage right regarding water in a reservoir. (*See id.*) This understanding

11   persisted through the initial litigation. For example, when the reservoir came up during

12   cross examination in the initial litigation before the special master, the government

13   objected to the relevance of those questions and the special master tentatively agreed

14   that the reservoir was immaterial to the issues in the case. (ECF No. 2652-8 at 7-9.) The

15   Court's initial decision confirmed as much, noting that a report prepared by the Department

16   of the Interior recommended the creation of a reservoir, and opining that the United States

17   should build one, but simultaneously indicating that reservoir was outside the scope of the

18   initial phase of this case. *See Walker I*, 11 F. Supp. at 165-66. In addition, after the initial

19   litigation concluded, the parties appeared to retain the same view—that the litigation had

20   not addressed the question of water storage in Webber Reservoir. (ECF No. 2638-18 at

21   4-5.)[8]

22        The record accordingly supports Plaintiffs' view that the only water right actually

23   litigated in the litigation culminating in the 1936 Decree was a right to 10,000 cubic feet of

24   water per second of surface water from the Walker River and its tributaries (ECF No. 2638-

25

26   _____

27        [8]The Court agrees with Plaintiffs that this is an admissible ancient document. (ECF
     No. 2659 at 24 n.19.) *See also Chemehuevi Indian Tribe v. McMahon,* 934 F.3d 1076,
28   1081 (9th Cir. 2019), *cert. denied,* 140 S. Ct. 1295, 206 L. Ed. 2d 375 (2020) (finding that
     a report prepared in 1907 was "plainly admissible as an ancient document, Fed. R. Evid.
     803(16), which may contain multiple levels of hearsay.") (additional citation omitted).

1   5 at 37), though the Ninth Circuit Court of Appeals ultimately awarded the United States

2   less, a:

> continuous flow of [only] 26.25 cubic feet of water per second, to be diverted
> from Walker River upon or above Walker River Indian Reservation during
> the irrigation season of one hundred and eighty days for the irrigation of two
> thousand one hundred acres of land on the reservation, and the flow of water
> reasonably necessary for domestic and stock watering purposes and for
> power purposes to the extent now used by the Government, during the non-
> irrigating season, with a priority of November 29, 1859, and enjoin[ed] the
> defendants from preventing or interfering with the natural flow of the
> described quantities of water in the channels of the stream and its tributaries
> to and upon the reservation.

9   *United States v. Walker River Irr. Dist.*, 104 F.2d 334, 340 (9th Cir. 1939) ("*Walker II*").

10          In sum, the parties have not actually litigated the water rights claims Plaintiffs now

11  seek in their counterclaims and Plaintiffs are not precluded from doing so under *Arizona*

12  *II*'s principles of finality and repose. Plaintiffs are accordingly entitled to summary judgment

13  on Defendants' Third Affirmative Defense.

14          **C.     The Seventh and Twelfth Affirmative Defenses**

15          In Defendants' Seventh Affirmative Defense, they argue that the Tribe does not

16  have a federal reserved water right for lands added to the Walker River Reservation after

17  1924 if the purpose of those lands can be satisfied by the Tribe's surface water right

18  awarded to them under the 1936 Decree. (ECF No. 2649 at 86-88.) In their Twelfth

19  Affirmative Defense, Defendants argue that the Tribe cannot have a groundwater right that

20  enlarges a surface water right already awarded to it. (ECF No. 2649 at 80-86.) As further

21  discussed below, the Court agrees with Plaintiffs that they are entitled to summary

22  judgment on both of these affirmative defenses. The Court addresses these affirmative

23  defenses together because they are effectively very similar, and the Court finds that *Agua*

24  *Caliente* largely forecloses Defendants' arguments on both of them.

25          Contrary to Defendants' arguments supporting their assertion of these two

26  affirmative defenses, "the question is not whether water stemming from a federal right is

27  necessary at some selected point in time to maintain the reservation; the question is

28  whether the purpose underlying the reservation envisions water use." *Agua Caliente*, 849

1    F.3d at 1269. And other elements of *Agua Caliente* do not support Defendants' arguments

2    either. For example, after determining that the purpose of the reservation at issue in *Agua*

3    *Caliente* envisioned water use, the *Agua Caliente* court went on to explicitly hold that the

4    *Winters* doctrine applies to groundwater for the first time. *See id.* at 1270-71. In so doing,

5    the *Agua Caliente* court noted that the other main limitation of the *Winters* doctrine is that

6    it only applies to unappropriated water that is "'appurtenant' to the reservation." *Id.* at 1271

7    (citation omitted). And the *Agua Caliente* court went on to hold that that tribe's *Winters*

8    right to groundwater was not defeated because the tribe had correlative rights to

9    groundwater under state law, it had not previously drilled for groundwater, and the tribe

10   already had rights to surface water under a state law decree. *See id.* at 1272. The "fact

11   that the Tribe did not historically access groundwater does not destroy its right to

12   groundwater now." *Id.*

13          These elements of *Agua Caliente* effectively foreclose Defendants' arguments

14   underlying the Seventh and Twelfth Affirmative Defenses. First, the Tribe's *Winters* right

15   is not determined by how much water it needs at a particular point in time; it depends on

16   whether the purpose underlying the reservation envisioned water use. *See Agua Caliente*

17   849 F.3d at 1269; *see also Arizona II*, 460 U.S. at 617 (rejecting "Arizona's proposal that

18   the quantity of water reserved should be measured by the Indian's 'reasonably

19   foreseeable needs[.]'"). And here, Defendants do not appear to seriously dispute that the

20   United States envisioned the Tribe would need water when it created and subsequently

21   expanded the Walker River Reservation—indeed, the purpose was to create a homeland

22   for the Tribe where they could farm and graze livestock. *See Walker II*, 104 F.2d at 338-

23   40; *see also id.* at 339 ("It would be irrational to assume that the intent was merely to set

24   aside the arid soil without reserving the means of rendering it productive.").[9]

25

26   _____

27          [9]While it significantly predates *Agua Caliente*, the Ninth Circuit in this very case engaged in the purpose inquiry the *Agua Caliente* court also undertook in determining that

28   the Tribe had *Winters* rights, reversing the *Walker I* court's holding that they did not because the Walker River Reservation was created by statute, not treaty. *Compare Walker II*, 104 F.2d at 337-40 *with Agua Caliente*, 849 F.3d at 1268-70.

Second, Defendants' suggestion that there is a zero-sum relationship between surface water and groundwater was expressly rejected in *Agua Caliente*, where, like here, the tribe already had an entitlement to some surface water. *See Agua Caliente* 849 F.3d at 1270-72.

Third, Defendants' suggestion that land later added to the Walker River Reservation did not come with any additional reserved groundwater is both illogical and foreclosed by *Agua Caliente*. As the *Agua Caliente* court explained, the *Winters* doctrine applies to appurtenant water sources. *See id.* at 1271. Appurtenant means "[a]nnexed to a more important thing[,]" APPURTENANT, Black's Law Dictionary (11th ed. 2019), in this context, land. It is accordingly illogical to suggest—as Defendants do—that more land should not come with more groundwater. Moreover, and as noted above, the *Agua Caliente* court did not find that existing rights to surface water meant the applicable tribe did not have *Winters* rights to groundwater. *See* 849 F.3d at 1270-72. Further, it has also long been inaccurate under the governing law to suggest that the Tribe's *Winters* right to groundwater should be limited to the amount the Tribe was actually using at a particular point in time, rendering Defendants' argument focused on the amount of water the Tribe needs even more unpersuasive. *See United States v. Ahtanum Irr. Dist.*, 236 F.2d 321, 328 (9th Cir. 1956). Thus, Defendants' arguments reflected in the Seventh and Twelfth Affirmative Defenses that the Tribe's *Winters* rights are limited by actual need or fixed in time fail as a matter of law.

In addition, the Court agrees with Plaintiffs (ECF No. 2659 at 8) that Defendants' rhetorical strategy of defending their inclusion of the Twelfth Affirmative Defense by reiterating their 'could have been litigated' argument the Court also rejected *supra* is effectively a concession that the Twelfth Affirmative Defense fails as a matter of law (ECF No. 2649 at 80-86).

Finally, the Court notes that much of Defendants' argument on these two affirmative defenses goes to the ultimate amount of water that the Tribe should be awarded on Plaintiffs' counterclaims. But the Court has not yet made that determination—and will not

15

1 | until it reaches the merits of Plaintiffs' counterclaims. Like the *Agua Caliente* court, the
2 | Court expresses no opinion in this order "on how much water falls within the scope of the
3 | Tribe's federal groundwater right[.]" *See* 849 F.3d at 1273. That is a separate inquiry
4 | reserved for another day.

5 | **V.    CONCLUSION**

6 | The Court notes that the parties made several arguments and cited to several cases
7 | not discussed above. The Court has reviewed these arguments and cases and determines
8 | that they do not warrant discussion as they do not affect the outcome of the Motion.

9 | It is therefore ordered that Plaintiffs' motion for summary judgment (ECF No. 2638)
10 | is granted.

11 | It is further ordered that Plaintiffs are entitled to judgment as a matter of law in their
12 | favor as to Defendants' Third, Seventh, Twelfth, and Fourteenth Affirmative Defenses.

13 | DATED THIS 21st Day of September 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE